## PORTO RICO TELEPHONE CO. v. PEOPLE OF PORTO RICO.

### No. 2494.

Circuit Court of Appeals, First Circuit.

Feb. 19, 1931.

Howard L. Kern and Samuel C. Bowman, both of New York City (Jaime Sifre, Jr., of San Juan, Porto Rico, on the brief), for appellant.

William C. Rigby, of Washington, D. C. (James R. Beverley, Atty. Gen. of Porto Rico, and Grant T. Trent and Edward A. Kreger, both of Washington, D. C., on the brief), for the People.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a criminal information brought in the district court of San Juan against the Porto Rico Telephone Company, charging it with the offense denounced by sections 6 and 8 of Act No. 91, alleged to have been enacted by the Legislature of Porto Rico on March 31, 1919. It reads as follows:

"That on one of the days of the month of February, 1928, in San Juan, which forms

part of the judicial district of the same name, the defendant corporation, Porto Rico Telephone Company, then and there employed the services of Angel Irizarry upon payment to him of a biweekly salary, and, without having made any advance to him discounted the sum of $2.80, part of the biweekly wage earned by him, to be paid to other persons."

In the district court the defendant was found guilty and sentenced to pay a fine of $25 and costs. The telephone company appealed to the Supreme Court of Porto Rico, which affirmed the judgment of the court below. It then appealed to this court.

It is agreed for the purpose of this case that, in obedience to section 33 of the Organic Act of Porto Rico of 1917, the Legislature convened for its first regular session on August 13, 1917; that it continued thereafter in session until November 26, 1917, on which date, by concurrent resolution of both houses, the session was adjourned to February 4, 1918; that just prior to the adjournment, namely, on November 25, 1917, eleven bills were passed and duly submitted to the Governor; that among them was the act or measure in question; that the Governor failed to sign any of these eleven bills, and failed to return any of them within ten days to the house where they originated, as the Legislature was adjourned.

Among the bills was one authorizing the insular government to take control of an artesian well then supplying water to the municipality of Quebradillas. The executive secretary declined to promulgate the Quebradillas bill unless the court should decide it was a law. The municipality of Quebradillas filed in the Supreme Court of Porto Rico a petition for a writ of mandamus requiring the executive secretary to promulgate the act as a law. In the Supreme Court judgment was rendered in favor of the petitioner and the writ granted. 27 Porto Rico 138. And thereafter the eleven bills in question were promulgated as laws.

The first question raised, and which the parties have presented and argued, is whether the act which the telephone company is found to have violated, it being one of the acts which the Governor failed to sign or to return to the Legislature within ten days, both houses having taken an interim adjournment thereof on November 26, 1917, ever became a law under section 34 of the Organic Act; (2) whether the penal provisions of section 6 of the act under which the telephone company was convicted were within the title of the act; and (3) whether the employee whose wages were withheld was a laborer within the meaning of the act.

The portion of section 34 of the Organic Act of 1917 here material reads as follows:

"No bill shall become a law until it be passed in each house by a majority yea-and-nay vote of all of the members belonging to such house and entered upon the journal and be approved by the governor within ten days thereafter. If when a bill that has been passed is presented to the governor for his signature he approves the same, he shall sign it; or if not, he shall return it, with his objections to the house in which it originated, which house shall enter his objections at large on its journal and proceed to reconsider it. * * * If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the legislature by adjournment prevents its return, in which case it shall be a law if signed by the governor within thirty days after receipt by him; otherwise it shall not be a law. * * *

"Neither house shall, without the consent of the other, adjourn for more than three days, nor to any other place than that in which the two houses shall be sitting."

In construing this section of the Organic Act in the Quebradillas Case, where the facts, so far as they relate to the first question here raised, were the same as those here presented, the Supreme Court of Porto Rico said:

"Therefore, since the duration of the regular sessions of the Legislature of Porto Rico is not limited to a specified number of days, inasmuch as the Legislature is empowered by the Organic Act to recess for more than three days, subject only to the condition that both houses shall agree thereto, and inasmuch as when said Legislature is in session it is the duty of the Governor to return any bill not approved by him to the house of its origin, with a statement of his objections, within ten days after its receipt, the bill otherwise becoming a law without his approval and signature, the real question in this case is whether or not the adjournment agreed to by both houses on November 26, 1917, until the first Monday of the following February prevented the return by the Governor, with his objections, of the bill in which the municipality of Quebradillas is interested, inasmuch as he failed to approve it; for if it did not prevent such return, the said bill became a law on December 6, 1917."

In passing upon this question the court said:

"Considering the question exclusively in the light of the provisions of the act, it seems clear to us that inasmuch as the Legislature may adjourn its session at any time for more than three days to reconvene on another day set by it, such adjournment does not fix a definite period for the regular session nor constitute a final adjournment of the Legislature, for after the expiration of the recess period it can lawfully convene again in order to continue the same regular session, and therefore it does not prevent the return by the Governor of disapproved bills, because such prevention can occur only when the session has been finally adjourned, for the reason that the Legislature cannot then reconsider the bill. Its return by the Governor is therefore unnecessary and unless it is approved within thirty days the bill dies. But while the Legislature is in session on account of its not having been finally adjourned, no temporary recess prevents the return. To hold the contrary would be equivalent to revoking the provision authorizing an adjournment for more than three days, for any recess, however short it might be, taken while bills were before the Governor for approval, might have the effect of preventing the return of a bill to the house in which it originated when disapproved by the Governor. * * *

"It follows from what has been said that only an adjournment sine die can prevent the return of a bill, and this is the only kind of adjournment referred to in section 34 of the Organic Act. It does not contemplate the other temporary adjournments or recesses."

The above-quoted provisions from section 34 of the Organic Act are, so far as concerns the disposition of this case, the same as those contained in article 1, § 7, cl. 2, and section 5, cl. 4, of the Constitution of the United States, and unquestionably were taken therefrom.

In the Pocket Veto Case, 279 U. S. 655, 672, 49 S. Ct. 463, 73 L. Ed. 894, the Supreme Court of the United States had under consideration the construction of article 1, § 7, cl. 2, and section 5, cl. 4. In stating the question there under consideration the court said:

"This case presents the question whether, under the second clause in section 7 of Article 1 of the Constitution of the United States, a bill which is passed by both Houses of Congress during the first regular session of a particular Congress and presented to the President less than ten days (Sundays excepted) before the adjournment of that session, but is neither signed by the President nor returned by him to the house in which it originated, becomes a law in like manner as if he had signed it."

It is thus seen that the question there considered is the same one here presented. It was there held:

1. "The power [of qualified negative or veto] * * * conferred upon the President cannot be narrowed or cut down by Congress, nor the time within which it is to be exercised lessened, directly or indirectly.

"And it is just as essential a part of the constitutional provisions, guarding against ill-considered and unwise legislation, that the President, on his part, should have the full time allowed him for determining whether he should approve or disapprove a bill, and if disapproved, for adequately formulating the objections that should be considered by Congress, as it is that Congress, on its part, should have an opportunity to re-pass the bill over his objections. * * * And it is plain that when the adjournment of Congress prevents the return of a bill within the allotted time, the failure of the bill to become a law cannot properly be ascribed to the disapproval of the President—who presumably would have returned it before the adjournment if there had been sufficient time in which to complete his consideration and take such action—but is attributable solely to the action of Congress in adjourning before the time allowed the President for returning the bill had expired."

2. That "the word 'days,' [in the phrase within ten days (Sundays excepted)] when not qualified, means in ordinary and common usage calendar days. This is obviously the meaning in which it is used in the constitutional provision, and is emphasized by the fact that 'Sundays' are excepted. There is nothing whatever to justify changing this meaning by inserting the word 'legislative' as a qualifying adjective."

3. That the "word 'adjournment' is not qualified by the word 'final'; and there is nothing in the context which warrants the insertion of such a limitation. On the contrary, the fact that the word 'adjournment' as used in the Constitution is not limited to a final adjournment, is shown by the first clause in section 5 of Article 1, which provides that a smaller number than a majority of each House may 'adjourn' from day to day,

and by the fourth clause of the same Article, which provides that neither House, during the session of Congress, shall, without the consent of the other, 'adjourn' for more than three days."

And 4. That "the determinative question in reference to an 'adjournment' is not whether it is a final adjournment of Congress or an interim adjournment, such as an adjournment of the first session, but whether it is one that 'prevents' the President from returning the bill to the House in which it originated within the time allowed"; and "since the bill is to be returned to the same 'House,' and none other, that is to enter the President's objections on its journal and proceed to reconsider the bill—there being only one and the same reference to such House—it follows, in our opinion, that under the constitutional mandate it is to be returned to the 'House' when sitting in an organized capacity for the transaction of business, and having authority to receive the return, enter the President's objections on its journal, and proceed to reconsider the bill; and that no return can be made to the House when it is not in session as a collective body and its members are dispersed."

It is also there said:

"We find no substantial basis for the suggestion that although the House in which the bill originated is not in session the bill may nevertheless be returned, consistently with the constitutional mandate, by delivering it, with the President's objections, to an officer or agent of the House, for subsequent delivery to the House when it resumes its sittings at the next session, with the same force and effect as if the bill had been returned to the House on the day when it was delivered to such officer or agent. Aside from the fact that Congress has never enacted any statute authorizing any officer or agent of either House to receive for its bills returned by the President during its adjournment, and that there is no rule to that effect in either House, the delivery of the bill to such officer or agent, even if authorized by Congress itself, would not comply with the constitutional mandate."

It is unnecessary for us to say, in view of the conflict between these two decisions construing substantially identical language, what conclusion we would reach if the Organic Act of Porto Rico were a local law of the island. But it is not a local law. It is an act of Congress, and, being such, the scope of our right of review is not so limited as it would be were it a local law. Being an act of Congress and clothed in substantially the same language as the corresponding provisions of article 1 of the Constitution, which have been construed as above set forth by the Supreme Court of the United States, we feel bound to say that the act under consideration never became a law.

It may be added that the act is a penal one and involves no rights of property calling for the application of the doctrine of stare decisis.

We find it unnecessary to consider the other questions raised.

The judgment of the Supreme Court of Porto Rico is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.